UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEVONTE BOLDEN, <br><br> Plaintiff, <br><br> v. <br><br> DAVID SALGADO, STAR # 16347; ROCCO PRUGER, STAR # 15445; ASAHI HAYDEN, STAR #10118; RICHARD MOSTOWSKI, STAR #12898; XAVIER ELIZONDO, STAR #1340; B. MARTINEZ, STAR #14519; NICHOLAS D'ANGELO, STAR #16801; JEFFERY CARIBOU, STAR #7416; and THE CITY OF CHICAGO, <br><br> Defendants | No. 18-cv-4233 <br><br> Judge John J. Tharp, Jr. <br><br> Magistrate Judge Sidney I. Schenkier <br><br> JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**[*]

Plaintiff Devonte Bolden, through his undersigned attorneys, complains of Defendants David Salgado, Star # 16347; Rocco Pruger, Star # 15445; Asahi Hayden, Star #10118; Richard Mostowski, Star #12898; Xavier Elizondo, Star #1340; B. Martinez, Star #14519; Nicholas D'Angelo, Star #16801; Jeffery Caribou, Star #7416 (collectively the "Defendant Officers"); and the City of Chicago as follows:

**INTRODUCTION**

This case arises from criminal misconduct by members the "6713 Team," a corrupt group of Chicago Police Department ("CPD") officers operating out of the CPD's 10th gang enforcement unit. The Defendant Officers named in this complaint, all of whom were or are members of the 6713 Team or who were affiliated with the team, engaged in an ongoing criminal

---

[*] Pursuant to Federal Rule of Civil Procedure 15(a)(2), all opposing parties have given Plaintiff their written consent for the filing of this First Amended Complaint.

1

conspiracy—essentially a robbery ring—in which they used the power of their positions as CPD officers to steal cash, jewelry, drugs, and other items of value from Chicago residents in order to enrich themselves.

The 6713 Team used a variety of methods to accomplish this scheme, including illegally entering persons' homes through bogus search warrants; conducting illegal searches of homes, vehicles, and persons; false arrests and charges; stealing narcotics and money; and using intimidation and threats in order to extort narcotics and money as well as cover up the officers' own illegal conduct. Thus far, two members of the 6713 Team—Defendants Salgado and Elizondo—have been indicted and charged criminally for this misconduct.

This criminal misconduct was enabled by the policies and customs of the CPD and Defendant the City of Chicago, which has permitted CPD officers to violate the law with impunity—up to and including criminal misconduct like that committed by the Defendant Officers.

Plaintiff Devonte Bolden is one of numerous victims of this scheme. Emboldened by the City's indifference to misconduct within the CPD, the Defendant Officers subjected Plaintiff to excessive force, robbed him, and then falsely charged him with a crime, leading to months of wrongful imprisonment. Plaintiff brings this action to seek redress for the injuries he suffered at the hands of the Defendants.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this is an action arising under 42 U.S.C. § 1983. The Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because those claims are so related to

the claims providing the basis for federal subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district and this is a convenient and reasonable forum for the resolution of this dispute.

## PARTIES

3. Plaintiff Devonte Bolden is a Chicago resident.

4. Defendant David Salgado, STAR # 16347, is a CPD officer.

5. Defendant Rocco Pruger, STAR # 15445 is a CPD officer.

6. Defendant Asahi Hayden, STAR #10118 is a CPD officer.

7. Defendant Richard Mostowski, STAR #12898 is a CPD officer.

8. Defendant Xavier Elizondo, STAR # 1340 is a CPD officer.

9. Defendant Benjamin Martinez, STAR #14519 is a CPD officer.

10. Defendant Nicholas D'Angelo, STAR #16801 is a CPD officer.

11. Defendant Jeffrey Caribou, STAR #7416 is a CPD officer.

12. The City of Chicago is an Illinois municipality. Through the CPD it employs each of the Defendant Officers.

## FACTS

13. This case arises from misconduct by members or affiliates of the "6713 Team," a group of CPD officers operating out of the CPD's 10th District gang enforcement unit.

14. The Defendant Officers named in this complaint, all of whom were or are members of the 6713 Team or who were affiliated with the team, engaged in an ongoing scheme conspiracy—essentially a robbery ring—in which they used their authority as CPD officers to

steal cash, jewelry, drugs, and other items of value from Chicago residents, in order to enrich themselves.

15. The officers on the 6713 Team and their affiliates used a variety of methods to accomplish their scheme, including illegally entering persons' homes through bogus search warrants; conducting illegal searches of homes, vehicles, and persons; and using intimidation, threats, and false criminal charges against the targets of their thefts in order to extort narcotics and money as well as cover up the officers' own criminal conduct. Thus far, two members of this conspiracy—Defendants Salgado and Elizondo—have been indicted and charged criminally for acts arising from this scheme.

16. Those charges came too late to protect Plaintiff, who, as described herein, was robbed by members and accomplices of the 6713 Team, who then falsely arrested, charged, and imprisoned Plaintiff for a crime he did not commit.

17. On the evening of April 1, 2017 Plaintiff was in the apartment of an acquaintance, James Cannon, located at 2141 E. 70th Street. Besides Plaintiff and Mr. Cannon, several other individuals were in the apartment. At the time, Plaintiff possessed thousands of dollars in cash.

18. On information and belief, Mr. Cannon or another unknown individual had entered into an agreement with Salgado, Elizondo, Pruger, and the other Defendant Officers to steal items of value from Plaintiff and place false charges on him.

19. At around 6:20 p.m., the Defendant Officers arrived at the apartment. Mr. Cannon let them in. Once inside, Defendant Salgado tackled, subdued, and "arrested" Plaintiff. The take-down of Plaintiff was so violent that it injured his arm. The take-down was done pursuant to the conspiracy among the Defendant Officers so that they could rob Plaintiff and then cover up their theft by falsely charging him with a crime.

4

20. After subduing Plaintiff, the Defendant Officers took approximately $3,000 in cash from him. This cash was never inventoried or acknowledged in any of the Defendant Officers' incident reports after Plaintiff's arrest. This cash was taken pursuant to the scheme among all of the Defendant Officers to take Plaintiff's money and then falsely charge him with a crime.

21. Each of the Defendant Officers knew that the cash was taken and not reported. None of the Defendant Officers intervened to stop this misconduct, or to correct the record and report the seizure of cash, because each of the Defendant Officers was operating pursuant to a conspiracy in which the Defendant Officers would use the powers of their office to take cash from Chicago residents to enrich themselves.

22. After robbing Plaintiff, Defendant Pruger drafted an Original Case Incident Report in which he stated that when the Defendant Officers entered Mr. Cannon's apartment, Plaintiff had an extended-clip Glock pistol in his hand. This was false. Pruger made this false statement pursuant to the conspiracy among all the Defendant Officers to seize Plaintiff's money without reporting the seizure, and then falsely charge Plaintiff with a crime.

23. In the Original Case Incident Report, Officer Pruger also attributed statements to Plaintiff in which Plaintiff acknowledged having the Glock on his person. This was false. Plaintiff never made such a statement. Pruger made this false report pursuant to the conspiracy among all the Defendant Officers to take Plaintiff's money without reporting it, and then falsely charge Plaintiff with a crime.

24. On information and belief, the Defendant Officers were aware of the false statements that Pruger made in the Original Case Incident Report. None of them intervened to correct the record because each of the Defendant Officers was operating pursuant to a conspiracy

in which the Defendant Officers would use the powers of their office to seize valuable property from Chicago residents without reporting the seizure, and then cover up their misconduct by falsely charging or intimidating the victims.

25. After subduing Plaintiff, the Defendant Officers arrested him on charges of unlawful possession of a handgun. This charge was fabricated. The Defendant Officers arrested and charged Plaintiff pursuant to the conspiracy among all the Defendant Officers to take Plaintiff's money without reporting it, and then falsely charge Plaintiff with a crime.

26. None of the Defendant Officers intervened to stop this false arrest because each of the Defendant Officers was operating pursuant to a conspiracy in which the Defendant Officers would use the powers of their office to seize valuable property from Chicago residents without reporting the seizure, and then cover up their misconduct by falsely charging or intimidating the victims.

27. Based on these charges, Plaintiff was incarcerated in the Cook County Jail.

28. After arresting Plaintiff, Defendant Pruger gave testimony before a grand jury that (1) he saw Plaintiff with the handgun in Mr. Cannon's apartment and (2) that Plaintiff later acknowledged the handgun was his. Pruger was the only witness to testify against Plaintiff before the grand jury. Based on this testimony and the fact that Plaintiff was not legally permitted to possess a handgun, Plaintiff was indicted for a felony.

29. Pruger's testimony before the grand jury was false. Pruger gave this false testimony pursuant to the conspiracy among all the Defendant Officers to take Plaintiff's money without reporting it, and then falsely charge Plaintiff with a crime.

6

30. As a result of Pruger's false testimony, Plaintiff was indicted for a felony and was incarcerated at Cook County Jail for nine months. Plaintiff was forced to defend himself against these false charges and hired counsel to defend him.

31. In May 2018, Defendants Salgado and Elizondo were indicted and charged in a federal indictment with conspiring to commit embezzlement and theft. Evidence gathered by the FBI leading up to this indictment showed that Salgado and Elizondo were part of an ongoing criminal conspiracy to seize valuable property from Chicago residents without reporting the seizure, and then cover up their misconduct by falsely charging or intimidating the victims.

32. Also in May 2018, the Cook County State's Attorney's Office dropped all charges against Plaintiff, and he was freed from jail.

### COUNT I (42 USC § 1983)
(EXCESSIVE FORCE)

33. Each paragraph of this complaint is incorporated as if fully stated here.

34. In the course of "arresting" Plaintiff Defendant Salgado used significant force and injured Plaintiff.

35. This take-down was made pursuant to the conspiracy among the Defendant Officers to apprehend Plaintiff, rob him, and then falsely charge him with a crime to cover up the theft.

36. The force was excessive and violated Plaintiff's right to be free from unreasonable search and seizure.

37. Plaintiff was injured as a result of this excessive use of force.

### COUNT II (42 USC § 1983)
(DEPRIVATION OF LIBERTY)

38. Each paragraph of this complaint is incorporated as if fully stated here.

39. As a result of evidence fabricated by Defendant Pruger, in conspiracy with the Defendant Officers, Plaintiff was deprived of his liberty and was incarcerated in the Cook County Jail.

40. But for the misconduct of Defendant Pruger and the Office Defendants outlined above, the Plaintiff would not have suffered a deprivation of his liberty.

41. The misconduct of the Defendant Officers outlined above proximately caused injury to the Plaintiff, including, but not limited to prolonged incarceration, humiliation, embarrassment, and severe emotional distress.

**COUNT III – (42 USC § 1983)**
(*Monell* MUNICIPAL LIABILITY)

42. Each paragraph of this complaint is incorporated as if fully stated here.

43. The misconduct conduct of the Defendant Officers described herein was made possible by a culture of pervasive impunity for misconduct within the CPD, which is a subsidiary of Defendant City of Chicago.

44. The City maintains and exercises exclusive control over the CPD, its policies and procedures, as well as the conduct of all of its employees, including Defendant Officers.

45. Defendant City, through its subsidiary the CPD, has established certain policies and procedures that were adopted and promulgated through the actions and inactions of senior and intermediate supervising officers of the CPD, and were thereby ratified by Defendant City of Chicago.

46. At the time of this occurrence and prior thereto, there existed within the CPD and other organs of the City, including the Independent Police Review Authority ("IPRA"), policies and procedures which result in the failure or refusal to properly and legitimately investigate police misconduct committed by CPD officers against civilians in Chicago.

8

47. The failure and refusal by the City, to properly and legitimately investigate the use of police misconduct by CPD officers, signals a tolerance by the City of police misconduct by CPD officers, and constitutes a deliberate indifference by Defendant City of Chicago to such conduct.

48. A 2017 United States Department of Justice Department analysis of the CPD determined that there is and has been a pervasive "code of silence" within the CPD that led to the coverup and failure to investigate misconduct by CPD officers, which in turn emboldened unethical officers to violate the rights of Chicago residents with impunity.

49. A related report by the Chicago Police Accountability Task Force made similar findings of a pervasive code of silence, and found that the abuse of Chicago residents by CPD officers stemmed in large part from impunity among police officers, which was the result of ineffective and toothless investigations of police misconduct. As the Task Force stated, "[e]very stage of investigations and discipline is plagued by serious structural and procedural flaws that make real accountability nearly impossible."

50. This lack of accountability has allowed corrupt officers like the Defendant Officers in this case to run rampant within the CPD.

51. An emblematic case is that of Ronald Watts, Khaled Mohammed, and affiliated officers, who engaged in a criminal scheme substantially similar to that of the Defendant Officers in this case for more than a decade without serious consequences. And indeed, when honest CPD officers did try to stop the misconduct of the Watts crew, they were labelled "rats" by superiors within the CPD and faced retaliation from CPD management and line officers.

52. The recent indictment of Defendants Elizondo and Salgado, No. 18-CR-286 for theft, lying to federal authorities, and conspiracy to commit criminal offenses against the United

9

States, contains multiple instances of this behavior with is indicative of the pattern and practice alleged herein.

53. At no point were either Elizondo or Salgado disciplined or sanctioned in any manner for the criminal conduct that was alleged in the Indictment.

54. By its polices of non-feasance and deliberate indifference in the aforementioned areas, Defendant City of Chicago, through the CPD, let it be known to its supervisors and officers, such as the Defendant Officers, that City of Chicago condoned, ratified and, by virtue thereof encouraged, the unwarranted and illegal misconduct by said officers.

55. The acts and omissions of Defendant City of Chicago, through the policies and procedures implemented by the CPD and IPRA, were a deliberate and malicious deprivation of Plaintiff's constitutional rights as alleged herein.

56. As a matter of both policy and practice, the CPD and IPRA directly encouraged, and was thereby the moving force behind, the very type of misconduct at issue here by failing to adequately investigate its officers, such that its failure to do so is objectively unreasonable.

57. Defendant City of Chicago has failed to remedy the patterns of behavior described in this complaint, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

58. The policy and practice of Defendant City of Chicago condone a "code of silence" within the City of Chicago Police Department that results in the failure to report police misconduct and citizens suffering deprivations of their constitutional rights such as the one set forth in this Complaint.

59. Said policies, practices, customs, and omissions as set forth above, both individually and collectively, were maintained and implemented with deliberate indifference, and

caused agents, servants and/or employees of the Chicago Police Department referred to commit the aforesaid acts against Plaintiff and, therefore, acted as direct and proximate causes of said constitutional violations to Plaintiff.

60. As a direct and proximate cause of the wrongful acts of Defendant City of Chicago, Plaintiff suffered injuries, including physical injuries, loss of liberty, mental anguish, emotional damages, including emotional distress and a disruption of daily life functions.

### COUNT IV - (735 ILCS 10/9-102)
### (INDEMNIFICATION)

61. Each paragraph of this complaint is incorporated as if fully stated here.

62. In Illinois, public entities are obliged to pay any judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

63. The Defendant Officers acted within their scope of their employment in committing the misconduct described herein. Therefore, Defendant City of Chicago is liable as their employer for any resulting damages of award of attorney's fees.

\* \* \*

**WHEREFORE**, Plaintiff Devonte Bolden respectfully prays that this Court grant judgment against the Defendants, awarding compensatory damages, costs and attorneys fees, along with punitive damages against the Defendant Officers, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiff demands a trial by jury on all issues so triable.

Dated: November 3, 2018　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ *Dena M. Singer*

　　　　　　　　　　　　　　　　　　　　/s/ *Jonathan S. Bedi*

　　　　　　　　　　　　　　　　　　　　Bedi & Singer, LLP
　　　　　　　　　　　　　　　　　　　　910 West Van Buren, Suite 2S
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60607
　　　　　　　　　　　　　　　　　　　　(312) 525-2017


　　　　　　　　　　　　　　　　　　　　/s/ *Stephen H. Weil*

　　　　　　　　　　　　　　　　　　　　Stephen H. Weil – steve@weilchardon.com
　　　　　　　　　　　　　　　　　　　　Alexis G. Chardon – ali@weilchardon.com
　　　　　　　　　　　　　　　　　　　　Weil & Chardon LLC
　　　　　　　　　　　　　　　　　　　　333 S. Wabash Ave., Suite 2700
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60604
　　　　　　　　　　　　　　　　　　　　312-585-7404


　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 3, 2018, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                /s/ Jonathan S. Bedi